**Wesley Vaughn KAYLOR,**
**Plaintiff/Appellant,**

v.

**Christine BRADLEY, Commissioner, Tennessee Department of Correction, Ned McWherter, Governor, State of Tennessee, Defendants/Appellees.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Aug. 4, 1995.

Application for Permission to Appeal
Denied by Supreme Court
Nov. 27, 1995.

Wesley Vaughn Kaylor, Plaintiff/Appellant Pro Se.

Charles W. Burson, Attorney General and Reporter, Christina S. Shevalier, Assistant Attorney General, for Defendants/Appellees.

## OPINION

KOCH, Judge.

This appeal involves an inmate's eligibility to be considered for early parole under the Tennessee Comprehensive Correction Improvement Act of 1985. After the Department of Correction informed him that he was no longer eligible for early parole, the inmate filed a petition in the Chancery Court for Davidson County alleging that the department's refusal to consider him for early parole violated the Ex Post Facto and Due Process Clauses of the state and federal constitutions. The trial court granted the Commissioner of Correction's Tenn.R.Civ.P. 12.02(6) motion to dismiss, and the inmate has appealed. We have determined that the department's conduct complied with all applicable constitutional requirements and, therefore, affirm the dismissal of the petition.

### I.

Wesley Vaughn Kaylor was one of five persons who robbed and killed an elderly Rutherford County couple in October 1984. He later confessed to his involvement in the crimes and was convicted in May 1985 of two counts of first degree murder and one count of armed robbery. He received two life sentences for the murder convictions and a 20-year sentence for the armed robbery conviction, and the sentencing court determined that he should serve these sentences concurrently.[1] He is now incarcerated at the Southeastern Tennessee State Regional Correctional Facility in Pikeville.

Mr. Kaylor alleged in his petition that the governor issued a declaration of an overcrowding emergency in 1986 in accordance with the Tennessee Comprehensive Correc-

---

1. The Court of Criminal Appeals affirmed Mr. Kaylor's convictions on direct appeal, *State v. Kaylor*, App. No. 85–258–III, 11 T.A.M. 40–33, 1986 WL 8507 (Tenn.Crim.App. Aug. 1, 1986), *perm. app. denied* (Tenn. Sept. 29, 1986), and later found his petition for post-conviction relief to be without merit. *State v. Kaylor*, App. No. 89–70–III, 14 T.A.M. 48–32, 1989 WL 126091 (Tenn.Crim.App. Oct. 24, 1989), *perm. app. denied* (Tenn. Feb. 5, 1990).

tion Improvement Act of 1985.[2] He also alleged that he was eligible to be considered for early parole under this declaration and that he "waived into" these new procedures. In addition, he alleged that his prison counselor informed him in December 1993 that his earliest parole date was May 25, 2000 but that he was later informed that his earliest parole date had been changed to 2010 because the governor had issued a directive in January 1994 excluding all inmates convicted of homicide from consideration for early parole.

Mr. Kaylor sought administrative redress from the department and, when he was unsuccessful, filed a pro se petition in the Chancery Court for Davidson County. The legal foundation of his petition was that the retroactive application of the governor's 1994 directive excluding inmates convicted of homicide from consideration for early release violated the Due Process and Ex Post Facto Clauses of the state and federal constitutions. The trial court found that Mr. Kaylor "has no constitutional right to a parole hearing" and granted the State's motion to dismiss.

## II.

■ The sole purpose of a Tenn.R.Civ.P. 12.02(6) motion is to test the sufficiency of the complaint. *Cook v. Spinnaker's of Rivergate, Inc.,* 878 S.W.2d 934, 938 (Tenn.1994); *Dobbs v. Guenther,* 846 S.W.2d 270, 273 (Tenn.Ct.App.1992). A complaint should be dismissed only when it contains no set of facts that would entitle the plaintiff to relief. *Pemberton v. American Distilled Spirits Co.,* 664 S.W.2d 690, 691 (Tenn.1984); *Fuerst v. Methodist Hosp. S.,* 566 S.W.2d 847, 848 (Tenn.1978); *Rampy v. ICI Acrylics, Inc.,* 898 S.W.2d 196, 198 (Tenn.Ct.App.1994).

■ Motions to dismiss for failure to state a claim are now rarely granted in light of the liberal pleading standards in the Tennessee Rules of Civil Procedure. *Dobbs v. Guenther,* 846 S.W.2d at 273. Reviewing courts must always look to the substance of the challenged complaint rather than its form. *Usrey v. Lewis,* 553 S.W.2d 612, 614 (Tenn.Ct.App.1977). Thus, when the adequacy of a complaint is tested by a Tenn.R.Civ.P. 12.02(6) motion, we must review the complaint's allegations liberally in favor of the plaintiff, taking all factual allegations therein as true. *Cook v. Spinnaker's of Rivergate, Inc.,* 878 S.W.2d at 938; *Lewis v. Allen,* 698 S.W.2d 58, 59 (Tenn.1985). Like the trial court, we have concluded that Mr. Kaylor's petition fails to state a claim even under these relaxed standards.

## III.

At the outset, we must identify the claims for relief in Mr. Kaylor's petition. Both the trial court and the attorney general appear to have construed the petition as simply challenging the constitutionality of the denial of a parole hearing. We do not construe the petition so narrowly. A fair reading of Mr. Kaylor's petition demonstrates that he sought to litigate two constitutional issues—first the retroactive application of the 1985 amendments to the parole board's regulations and second the retroactive application of the governor's 1994 directive excluding inmates convicted of homicide from consideration for early release. Both issues implicate the Ex Post Facto Clauses of the state and federal constitutions.

### A.

Both the state and federal constitutions contain prohibitions against ex post facto laws. U.S. Const. art. I, § 10, cl. 1; Tenn. Const. art. I, § 11. The United States Supreme Court and the Tennessee Supreme Court have adopted complementary constructions of these provisions. In the words of Mr. Justice Chase, ex post facto laws include:

1st. Every law that makes an action done before the passing of the law; and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every

**2.** The Tennessee Comprehensive Correction Improvement Act of 1985 was enacted during the first extraordinary session of the Ninety–Fourth General Assembly. *See* Act of Dec. 5, 1985, ch. 5, 1985 Tenn.Pub.Acts 1st Extraordinary Sess. 22. The portions of the Act pertaining to overcrowding emergencies are codified at Tenn.Code Ann. §§ 41–1–501 to –510 (1990 & Supp.1994).

law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

*Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648, 650 (1798); *followed in Miller v. State,* 584 S.W.2d 758, 761 (Tenn.1979).

■ The United States Supreme Court has recently explained that the Ex Post Facto Clause is "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *California Dep't of Corrections v. Morales,* —— U.S. ——, ——, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588 (1995). The Tennessee Supreme Court has likewise stated that the critical question in an ex post facto analysis is "whether the law changes the punishment to the defendant's disadvantage, or inflicts a greater punishment than the law allowed when the offense occurred." *State v. Pearson,* 858 S.W.2d 879, 883 (Tenn.1993).

■ Both the federal and state precedents establish that two elements must be present in order for a criminal or penal law to run afoul of the Ex Post Facto Clause. First, the law must apply retrospectively to events occurring before its enactment. Second, the law must disadvantage the offender affected by it. *See, e.g., Lindsey v. Washington,* 301 U.S. 397, 401, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937). The law need not impair a vested right. As the United States Supreme Court has noted:

> Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.

*Weaver v. Graham,* 450 U.S. 24, 30–31, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981).

■ The courts have resisted devising a formula or set of bright line rules for analyzing ex post facto claims. *California Dep't of Corrections v. Morales,* —— U.S. at ——, 115 S.Ct. at 1603. Determinations of these claims are usually made on a case-by-case basis. The outcome depends on the significance of the right involved and the significance of the impairment. In close questions, the decisions oftentimes hinge on such subtle factors as the court's sense of fair play and justice. *People v. Smith,* 34 Cal.3d 251, 193 Cal.Rptr. 692, 696, 667 P.2d 149, 153 (1983).

■ The State cannot, and indeed does not, argue that retroactive alterations of the criteria for parole eligibility cannot implicate ex post facto concerns. Eligibility for parole consideration is part of the law annexed to the crime when committed. *Weaver v. Graham,* 450 U.S. at 32–33, 101 S.Ct. at 966; *Schwartz v. Muncy,* 834 F.2d 396, 398 (4th Cir.1987); *Burnside v. White,* 760 F.2d 217, 220 (8th Cir.), *cert. denied,* 474 U.S. 1022, 106 S.Ct. 576, 88 L.Ed.2d 559 (1985); *Lerner v. Gill,* 751 F.2d 450, 454 (1st Cir.), *cert. denied,* 472 U.S. 1010, 105 S.Ct. 2709, 86 L.Ed.2d 724 (1985). Thus, the repeal of parole eligibility standards previously available to an inmate implicates the Ex Post Facto Clause if the effect of the repeal is to impose a greater or more severe punishment than was proscribed by law at the time of the offense. *Warden v. Marrero,* 417 U.S. 653, 663, 94 S.Ct. 2532, 2538, 41 L.Ed.2d 383 (1974).

**B.**

Mr. Kaylor's first claim involves a parole board regulation containing a presumption that inmates will be paroled when they first become eligible. Even though the regulation has been repealed, Mr. Kaylor asserts that the department's refusal to give him the benefit of the presumption in future parole hearings is contrary to the Ex Post Facto Clause. We disagree.

■ The mere possibility of parole is not a constitutionally protected liberty interest. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7–11, 99 S.Ct. 2100, 2104–05, 60 L.Ed.2d 668 (1979).

A state's parole statutes and regulations may, however, create a liberty interest. In 1984 the United States Court of Appeals for the Sixth Circuit found that inmates in Tennessee had a protected liberty interest in parole because of a parole board regulation containing presumptions that eligible inmates were "worthy" candidates for parole and therefore that inmates "will be released on parole when ... [they are] first eligible." *Mayes v. Trammell,* 751 F.2d 175, 179 (6th Cir.1984).

The parole board removed the presumptions from its regulations in response to the *Mayes v. Trammell* decision. The amended regulation became effective on April 10, 1985. Thereafter, the United States Court of Appeals for the Sixth Circuit held that Tennessee inmates no longer had a liberty interest in being paroled. *Wright v. Trammell,* 810 F.2d 589, 591 (6th Cir.1987).[3]

■■■ Mr. Kaylor insists that the amended regulation can only apply to inmates who committed their crimes after April 10, 1985, and that retroactively applying the regulation violates the Ex Post Facto Clause because refusing to give him the benefit of the regulation's presumption will inflict a greater punishment on him than permitted by the law in existence when he committed his crimes. His claim fails for two reasons. First, it is entirely speculative because he has not alleged that he would have been released earlier under the regulations as they stood in 1984. Second, the presumptions on which he relies were never valid because they were inconsistent with the statutes on the same subject.

■■■ Mr. Kaylor's petition contains no allegations that the amended regulations significantly altered the board's decision-making process, that they had any effect on the accrual of his sentence credits, or that they had or will have any effect on the length of his or any other inmate's confinement.[4] We are not required to create claims when they are not pled. *Donaldson v. Donaldson,* 557 S.W.2d 60, 62 (Tenn.1977). Accordingly, we are not required to read into Mr. Kaylor's complaint allegations that the current interpretation and application of the amended regulations will result in more onerous punishment than the former regulations.

Parole was "a privilege and not a right" according to the parole statutes in existence when Mr. Kaylor committed his crimes.[5] Parole decisions were exclusively within the discretion of the parole board. *See* Tenn. Code Ann. §§ 40–28–116(a)(1) (1982); *State ex rel. Ivey v. Meadows,* 216 Tenn. 678, 685, 393 S.W.2d 744, 747 (1965). Thus, inmates like Mr. Kaylor had no absolute right to be paroled at the time Mr. Kaylor committed his offenses. *Graham v. State,* 202 Tenn. 423, 426, 304 S.W.2d 622, 623 (1957); *State ex rel.*

---

3. Mr. Wright had been convicted in March 1979 of five counts of possessing a controlled substance with intent to sell. He was later paroled but in February 1985 pleaded guilty to a new charge of possession with intent to sell. *See Wright v. State,* Shelby No. 77, 12 T.A.M. 31–24, 1987 WL 13172 (Tenn.Crim.App. June 30, 1987), *perm. appeal denied concurring in results only* (Tenn. Sept. 14, 1987); *Wright v. State,* Shelby No. 17, 11 T.A.M. 10–47, 1986 WL 1250 (Tenn. Crim.App. Jan. 29, 1986). The United States Court of Appeals held that Mr. Wright did not have a protected liberty interest in parole even though his crime, like Mr. Kaylor's, predated the amendment to the regulation. The opinion, however, contains no indication that an Ex Post Facto Clause issue was ever raised.

4. Mr. Kaylor only discussed the amended regulations in a small portion of the argument section of his brief. He neither raised the retroactive application of these amendments as an issue in

the "Grounds" for his petition nor in his first or second "Causes of Action." Furthermore, in his "Requests for Relief," he did not include relief from the amended regulations. Although we permit certain informality in the form of briefs filed by pro se litigants, *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972), we cannot excuse a pro se party from complying with applicable procedural and substantive law. *Irvin v. City of Clarksville,* 767 S.W.2d 649, 652 (Tenn.Ct.App.1988).

5. Tenn.Code Ann. § 40–28–117(a) (1982) stated: "Parole being a privilege and not a right, no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board is of the opinion that there is a reasonable probability that if such prisoner is released he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society."

*Greene v. Rimmer,* 131 Tenn. 316, 327–28, 174 S.W. 1134, 1137 (1915).

■ Administrative regulations cannot be inconsistent with statutes on the same subject. *Tasco Developing & Bldg. Corp. v. Long,* 212 Tenn. 96, 102, 368 S.W.2d 65, 67 (1963); *Knox County ex rel. Kessel v. Knox County Personnel Bd.,* 753 S.W.2d 357, 360 (Tenn.Ct.App.1988). The now repealed regulation, as construed by the United States Court of Appeals for the Sixth Circuit in *Mayes v. Trammell,* created a presumption that was inconsistent with the parole board's statutory obligation to determine on an individualized, case-by-case basis that an inmate should be released on parole. *See State ex rel. Neilson v. Harwood,* 183 Tenn. 567, 570–72, 194 S.W.2d 448, 449–50 (1946). Accordingly, the regulation, being invalid since before Mr. Kaylor committed his crimes, cannot provide any benefit to Mr. Kaylor or other similarly situated inmates.

### C.

Mr. Kaylor's second claim is that the department's decision to exclude him from consideration for early release in accordance with the governor's January 1994 declaration violates the Ex Post Facto Clauses in the state and federal constitutions. We disagree. The early release program came into being after Mr. Kaylor's 1985 convictions, and thus his right to be considered for early release can be no greater than the rights conferred in the statutes establishing the program.

■ The early release program had not yet been enacted in 1984 when Mr. Kaylor participated in the robbery and murder of his victims. Accordingly, his release eligibility date was initially controlled by Tenn.Code Ann. § 40–28–115(b) (1990). This statute continues to govern Mr. Kaylor's release eligibility date unless he qualifies for consideration under another statute.

■ The early release program does not establish an unconditional right to early parole. It creates, at most, a temporary, conditional opportunity to be considered for early release. The program is available only to inmates who have not been excluded by the governor, Tenn.Code Ann. § 41–1–504(b)

(1990 & Supp.1994), and it lasts only as long as the overcrowding emergency exists. Once the system's population returns to ninety percent or less than its designated capacity, the remaining inmates are no longer eligible to be considered for early release and their "release eligibility dates . . . shall revert automatically to the dates in existence prior to their reductions pursuant to . . . [the declaration of an overcrowding emergency]." Tenn. Code Ann. § 41–1–505(a) (1990).

Mr. Kaylor alleges that the governor issued an overcrowding emergency declaration in 1986 that did not exclude inmates convicted of homicide from consideration for early parole. He also alleges that this declaration remains in effect even though there have been five intervening changes in the sentence reductions under the program. Finally, he alleges that the governor imposed new eligibility restrictions in January 1994 when he directed the department and the parole board not to consider inmates convicted of homicide for early release under the program.

Because this case was disposed of by granting a Tenn.R.Civ.P. 12.02(6) motion to dismiss, we must take these allegations as true. Accordingly, we must presume (1) that the five intervening changes in the amount of sentence reductions available under the program originated with either the department or the parole board, not the governor; (2) that the prison system's population has not fallen below 90% of its designated capacity since 1986; (3) that Mr. Kaylor's eligibility for consideration for early release under the governor's original 1986 declaration has not lapsed pursuant to Tenn.Code Ann. § 41–1–505(a); and (4) that the governor's January 1994 directive was not part of a new declaration issued in response to another overcrowding emergency occurring after 1986.

■ Mr. Kaylor asserts that the statutes do not permit the governor to impose new or different restrictions on the eligibility for early release after declaring an overcrowding emergency. We do not read Tenn.Code Ann. § 41–1–504(b) so narrowly. The statute empowers the governor to impose any restrictions on eligibility for early release that he or

she may wish to impose, and it specifically states that

> [t]here shall be no limits on the number or types of such restrictions the governor may impose on early release eligibility as long as a sufficient number of inmates are eligible for consideration to reduce the in-house population of appropriate state correctional facilities to ninety percent (90%) of the relevant designated capacity.

Accordingly, we conclude that as long as an overcrowding emergency exists, the governor may alter the restrictions on eligibility for early release as long as the changes do not impede the department's and the board's ability to reduce the prison population to ninety percent or less of the system's designated capacity.

Mr. Kaylor has not alleged that the governor's January 1994 directive prevents the department or the parole board from reducing the overall prison population to statutorily acceptable limits. Nor has he alleged that the parole board would have released him earlier but for the governor's directive. Because the governor retains the right to change the eligibility requirements for early parole while an overcrowding emergency exists, Mr. Kaylor's complaint fails to state a claim upon which relief may be granted.

### IV.

The Due Process Clauses of the state and federal constitutions protect only genuine claims involving pre-existing entitlements. They do not protect unilateral expectations or abstract needs or desires. *Weaver v. Graham,* 450 U.S. at 29–30, 101 S.Ct. at 964–65; *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Mid–South Indoor Horse Racing, Inc. v. Tennessee State Racing Comm'n,* 798 S.W.2d 531, 540 (Tenn.Ct.App.1990). Thus, Mr. Kaylor's petition states a due process claim only if he acquired a vested right to an early release or a vested right to be considered for early release. State law provides him with neither.

---

6. The trial court dismissed Mr. Kaylor's petition on the narrow ground that he had no constitutional right to a parole hearing. We may affirm a judgment upon different grounds than those relied on by the trial court when the trial court

Inmates eligible for early release consideration do not have a statutory right to be paroled early. The parole board retains the right to decide which inmates should be paroled and may decline to release an inmate if it cannot conclude with reasonable probability that the inmate, if released, will live and remain at liberty without violating the law and that the inmate's release is consistent with society's welfare. *See* Tenn.Code Ann. § 40–28–117(a). Likewise, eligible inmates do not have a vested right to be considered for early release because the governor retains the power to alter the eligibility criteria at any time and because the opportunity to be considered for early release lapses once the overcrowding emergency abates.

### V.

We affirm the judgment dismissing the petition for failure to state a claim [6] and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs against Wesley Vaughn Kaylor.

TODD, P.J., (M.S.), and LEWIS, J., concur.

---

has reached the correct result. *Continental Casualty Co. v. Smith,* 720 S.W.2d 48, 50 (Tenn. 1986); *Clark v. Metropolitan Gov't,* 827 S.W.2d 312, 317 (Tenn.Ct.App.1991).