IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 2, 2001

## BILLY R. SADLER v. TENNESSEE BOARD OF PROBATION AND PAROLE

### Appeal from the Chancery Court for Davidson County
No. 00-457-III     Ellen Hobbs Lyle, Chancellor

### No. M2001-02341-COA-R3-CV - Filed November 8, 2001

A prisoner who was denied parole filed a Petition for Writ of Certiorari, challenging, on constitutional grounds, the procedures followed by the Parole Board. The trial court dismissed the petition. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Billy Sadler, Tiptonville, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Kimberly J. Dean, Deputy Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.

Billy Sadler, an inmate at the Northwest Correctional Complex, was convicted of second degree murder in 1977, and sentenced to life imprisonment. He went before the Board of Paroles on December 9, 1999. A majority of the Board voted to deny him parole on the grounds that to release him at that time would depreciate the seriousness of his crime, and that it would have a substantially adverse effect on institutional discipline. His next hearing was scheduled for December of 2001.

Mr. Sadler then filed a pro se Petition for Writ of Certiorari accompanied by a Motion to Proceed in Forma Pauperis. In his petition, he asked the court for three far-reaching rulings

involving the parole statutes, any of which, if granted, might invalidate the Parole Board's decision in his case (though it would not necessarily lead to his release).

The prisoner asked the court to declare Tenn. Code. Ann. § 40-28-115 unconstitutional because it allegedly violates the separation of powers; to find that the application of a number of different statutes to his case amounts to a violation of the prohibition against ex post facto laws; and to hold that the rules of the Board of Pardons and Paroles (a body which was abolished in 1979) are the only rules that the current Parole Board should be allowed to follow in his case.

Mr. Sadler subsequently filed several motions. One was a Motion for Discovery, to compel the Parole Board to prepare a written transcript of his parole hearing. The trial court denied the motion, because the court is not authorized to grant discovery before the petitioner makes a proper discovery request to opposing counsel pursuant to the Rules of Civil Procedure. The court noted in a later Memorandum and Order that petitions for writ of certiorari usually proceed on the record, and that typically, discovery is not permitted.

Mr. Sadler also filed a Motion to Amend his Complaint and a Motion for Default Judgment. The Motion to Amend was granted. In his Motion for Default Judgment, Mr. Sadler complained that the State had not responded to his petition. However, the court noted in a Memorandum and Order filed on May 9, 2000, that the petitioner had not filed the affidavit required by Tenn. Code. Ann. § 41-21-801 when inmates file in forma pauperis, and therefore that the State had never been served.

After Mr. Sadler was informed of this omission, he filed the required affidavit. The State subsequently filed a timely motion for an extension of time in which to respond to his petition. Mr. Sadler also filed a second Motion to Amend. The trial court filed a Memorandum and Order on the pending motions on June 28, 2000. The court denied Mr. Sadler's Motion for Default Judgment, gave the State until July 14, 2000 to file a response to Mr. Sadler's petition, and denied Mr. Sadler's second Motion to Amend, because he failed to attach a copy of his proposed amendment to his motion.

On July 14, 2000, the State filed a Motion to Dismiss and/or for Summary Judgment. Shortly thereafter, Mr. Sadler filed another Motion for Default Judgment. On September 8, 2000, the trial court filed its final Memorandum and Order in this case. The court denied Mr. Sadler's Motion for Default Judgment, and granted the State's Motion to Dismiss. This appeal followed.

## II. SEPARATION OF POWERS

Mr. Sadler's first argument on appeal is that Tenn. Code. Ann. § 40-28-115(c), which deals with the jurisdiction of the Parole Board, is unconstitutional because it violates the separation of powers mandated by the U.S. and Tennessee Constitutions. The statute in question simply reads, "[t]he action of the board in releasing prisoners shall be deemed a judicial function and shall not be reviewable if done according to law."

Of course, the United States Constitution is not relevant to our inquiry, because it does not govern the relationships between the different branches of Tennessee government. However, Article II, § 1 of the Tennessee Constitution does divide the state's government into "three distinct departments: the legislative, executive, and judicial," while Article II, § 2 declares that "No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted."

We believe, however, that exercising a judicial function is not the same as being the recipient of a delegated power that properly belongs to the judicial branch. The exercise of a judicial function implies the use of judgment or discretion to apply the law to a set of facts. It also may imply an orderly process for assembling those facts, and the creation of some kind of record of that process and its results.

There are many boards and agencies of the executive branch, as well as subdivisions of state government, that exercise judicial functions, including the Civil Service Commission, numerous boards of professional licensure, beer boards, and local zoning boards. Likewise, when the legislature tries impeachments under Article V, § 4, it may be said to be exercising a judicial function.

We note that the Article III, § 6 gives the governor the "power to grant reprieves and pardons, after conviction, except in cases of impeachment" and that a portion of that power has been delegated to the Board of Paroles. Thus, when the Board determines whether or not a prisoner should be paroled, it is exercising one of the powers that properly belongs to the executive branch.

While it is unclear to us why the legislature found it necessary to state that the action of the Board in releasing prisoners shall be deemed a judicial function, the effect of Tenn. Code. Ann. § 40-28-115(c) is to limit (but not totally eliminate) the role the judiciary may assume in reviewing parole decisions. The statute prevents the courts from substituting their own judgment for that of the Parole Board. However, under their constitutional power to issue writs of certiorari, the courts may consider allegations that the Board did not reach a decision in a lawful manner. *See* Article VI, § 10, *Powell v. Parole Eligibility Review Board*, 879 S.W.2d 871 (Tenn. Ct. App.1994).

### III. EX POST FACTO ARGUMENTS

Mr. Sadler argues that Tenn. Code. Ann. §§ 40-35-501(h), 40-35-503(b), and 40-28-105(d) are illegal ex post facto laws as they relate to him, because they were all enacted after the date he was sentenced. However, in order for a penal statute to run afoul of the Ex Post Facto Clause, two elements must be present. "First, the law must apply retrospectively to events occurring before its enactment. Second, the law must disadvantage the offender affected by it." *Kaylor v. Bradley*, 912 S.W.2d 728, 732 (Tenn. Ct. App.1995). While there is no dispute that the present versions of the above statutes were enacted after the date of Mr. Sadler's conviction, he has not demonstrated that he has been disadvantaged by the application of these statutes to his parole hearing, to the extent necessary to state an ex post facto claim.

## A. TENN. CODE. ANN. § 40-35-501

Tenn. Code. Ann. § 40-35-501 is a section of the Criminal Sentencing Reform Act of 1989 that deals with release eligibility. Tenn. Code. Ann. § 40-35-501(h) apparently requires all prisoners sentenced to life to serve at least twenty-five years of their sentences before being released on parole, regardless of any sentence credits earned or any plan instituted to reduce prison overcrowding. We say "apparently" because a part of the statute refers to defendants sentenced to life for first degree murder, while another part simply refers to "a defendant sentenced to imprisonment for life."

Mr. Sadler contends that his parole eligibility date should not be governed by Tenn. Code Ann. § 40-35-501, because that statute was enacted after his conviction and sentencing. He argues that he is entitled to have his parole eligibility date calculated in accordance with the law in effect at the time he was sentenced. *See* Tenn. Code Ann. § 40-35-117.

The petitioner may well be correct. However, there is nothing in the record, or in Mr. Sadler's arguments, to indicate how his release eligibility date was calculated (including what statute it was based upon), or what the correct date would have been if the calculations had been based upon the law in effect in 1977. Further, it is the Department of Correction that calculates release eligibility dates for inmates, not the Board of Paroles. Therefore, Mr. Sadler has neither stated facts that would entitle him to relief, nor named a defendant with the power to respond to his claim. Finally, it also appears that this claim has become moot, since his eligibility for release is no longer in question.

## B. TENN. CODE ANN. § 40-35-503(B)

Tenn. Code Ann. § 40-35-503 is likewise incorporated into the Criminal Sentencing Reform Act of 1989. It reads in pertinent part,

(b) Release on parole is a privilege and not a right, and no inmate convicted shall be granted parole if the board finds that:
(1) There is a substantial risk that the defendant will not conform to the conditions of the release program;
(2) The release from custody at the time would depreciate the seriousness of the crime of which the defendant stands convicted or promote disrespect for the law;
(3) The release from custody at the time would have a substantially adverse effect on institutional discipline; or
(4) . . . .

Mr. Sadler argues that rather than making a parole decision based on the 1989 statute, the Board should have made use of a prior rule of the Board of Paroles (since repealed) which provided,

(1) The board operates under the presumption that each resident who is eligible for parole is a worthy candidate, and thus the Board presumes that he will be released on parole when he is first eligible.

However, that argument was foreclosed by this court in the case of *Kaylor v. Bradley*, 912 S.W.2d 728 (Tenn. Ct. App.1995). In that case, we ruled that the regulation was invalid even before it was repealed, because it created a presumption that was inconsistent with the Parole Board's statutory obligation to determine parole on an individualized case-by-case basis.

Further, we note that the language deeming parole to be a privilege and not a right was first incorporated into the Tennessee Code in 1961. [Acts 1961, ch. 93, § 11]. Moreover numerous cases before and after that date have affirmed that a prisoner has no absolute right to be released on parole, even if he has an unblemished disciplinary conduct record, and has served the minimum term for his offense. *Robinson v. Traughber*, 13 S.W.3d 361 (Tenn. Ct. App. 1999); *State ex rel. Wade v. Norvell*, 443 S.W.2d 839 (Tenn. Crim. App. 1969); *Graham v. State*, 304 S.W.2d 622 (Tenn. 1957); *Oliver v. State*, 87 S.W.2d 566 (Tenn. 1935).

### C. TENN. CODE ANN. § 40-28-105

In 1979, the Board of Pardons and Paroles was abolished, and replaced by the seven member Board of Paroles. Tenn. Code Ann. § 40-28-101, et seq. sets out the powers and duties of this body, as well as the procedures the Board is required to follow to determine whether or not an inmate should be granted parole.

Mr. Sadler argues in a general way that the procedures applicable to the abolished Board of Pardons and Paroles are the ones that the Board of Paroles should have followed in his case. He particularly objects to the requirement in 40-28-105(d)(4) that four board members concur before parole is granted to inmates convicted of certain offenses, including second degree murder. Under prior law, the concurrence of only three board members was required before such inmates could be paroled.

However, in order to state an ex post facto claim in a case involving changes in parole regulations, the inmate must show more than a slight possibility of a more favorable outcome under prior regulations. *See Wilson v. State*, 980 S.W.2d 196 (Tenn. Ct. App. 1998); *California Department of Corrections v. Morales,* 514 U.S. 499 (1995).

In this case, the only four members of the Parole Board to cast a vote on Mr. Sadler's parole voted not to release him, thus rendering it mathematically impossible for him to obtain the required number of votes from the seven-member Board. However, the appellant has not suggested any reason why any one of the non-voting members might have reached a different conclusion, let alone all three of them. Thus he has not demonstrated that he was disadvantaged to the extent necessary to state an ex post facto violation.

## IV. FRIVOLOUS APPEAL

Tenn. Code. Ann. § 27-1-122 gives this court the authority to assess damages for appeals which it deems to be frivolous. A frivolous appeal is one that presents no justiciable question, and which is so devoid of merit on its face, that there is no reasonable possibility that it can succeed. *See* Black's Law Dictionary (4th ed. 1961).

Possible sanctions for frivolous appeals include court costs, interest on any judgment assessed, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code. Ann. § 41-21-816 makes it possible for the Commissioner of Correction to impose still further sanctions. That statute reads in its entirety:

> (a) The commissioner shall forfeit an inmate's good conduct sentence reduction credits in the amount specified by subdivision (b) on:
> (1) Receipt by the department of a certified copy of a final order of a state or federal court that dismisses as frivolous or malicious a claim or lawsuit filed by an inmate while the inmate was in the custody of the department; and
> (2) A determination that the department has, on one (1) or more occasions, received a certified copy of a final order of a state or federal court dismissing as frivolous or malicious a claim or lawsuit filed previously by the inmate while the inmate was in the custody of the department.
> (b) On receipt of a final order described by subdivision (a)(1), the commissioner shall forfeit:
> (1) Sixty (60) days of an inmate's accrued good conduct sentence reduction credits if the department has previously received one (1) final order described by subdivision (a)(2);
> (2) One hundred twenty (120) days of an inmate's accrued good conduct sentence reduction credits if the department has previously received two (2) final orders described by subdivision (a)(2); or
> (3) One hundred eighty (180) days of an inmate's accrued good conduct sentence reduction credits if the department has previously received three (3) final orders described by subdivision (a)(2).
> (c) The commissioner may not restore good conduct sentence reduction credits forfeited under this section for any reason.

While the present case refers to valid constitutional principles, the appellant's arguments are devoid of merit, for the connections between those principles and the acts of which he complains are tenuous at best. While there is no doubt that Mr. Sadler feels strongly about the action the parole board took in his case, strong feelings are no substitute for valid legal arguments.

It thus appears to us that there are sufficient grounds to find this to be a frivolous appeal. However, in light of the fact that the State has not argued that Mr. Sadler's appeal was frivolous, we decline at this time to so find.

## V.

The order of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson Count for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Billy Sadler.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.