IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 12, 2004

## WILLIAM W. YORK v. TENNESSEE BOARD OF PROBATION AND PAROLE

Appeal from the Chancery Court for Davidson County
No. 01-3349-I     Irvin Kilcrease, Chancellor

No. M2003-00822-COA-R3-CV - Filed February 17, 2004

Appellant is an inmate of the Department of Corrections serving two life sentences for two first degree murder convictions with sentences imposed in 1978. He became eligible for parole, and on July 3, 2001, a hearing was held before the Tennessee Board of Probation and Parole. His application for parole was denied on July 3, 2001 and review of parole was set for July of 2011. Final disposition denying parole was entered October 2, 2001. On October 29, 2001, Appellant petitioned for a writ of certiorari in the Chancery Court of Davidson County, Tennessee, which petition was dismissed by the trial court on January 10, 2003. We affirm the trial court Order of Dismissal relative to the merits of the denial of parole but hold that postponement of parole review until July of 2011 was an arbitrary exercise of power by the parole board and, therefore, reverse the Order of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

William W. York, Mountain City, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; J. Brad Scarbrough, Assistant Attorney General, for the appellee, Tennessee Board of Probation and Parole.

**OPINION**

Appellant, William Wesley York, was convicted on two charges of first degree murder of victims Aubrey and Alberta Hawkins, whose bodies were found near Jellico, Tennessee on June 3, 1977. These convictions occurred in 1978 and resulted in two life sentences meted out to William Wesley York. He has remained in continuous confinement since his convictions and became eligible for parole consideration in July of 2001. A parole hearing was held before the Tennessee Board of

Probation and Parole on July 3, 2001, and, at the conclusion of the hearing, parole was declined on the basis that: "The release from custody at this time would Depreciate the seriousness of the crime of which the offender stands convicted or promote Disrespect of the law."

On October 2, 2001, his administrative appeal was denied, and he filed a timely Petition in the Chancery Court of Davidson County for the issuance of a writ of certiorari. This Petition was met by a Tennessee Rule of Civil Procedure 12.02(6) Motion to Dismiss for failure to state a claim upon which relief could be granted. On January 10, 2003, the trial court sustained the Motion to Dismiss holding:

> Respondent argues that Petitioner's Due Process and Ex Post Facto assertions have been repeatedly rejected by both State of Tennessee and Federal courts. This Court finds Respondent's motion meritorious. In 1978, Petitioner received two life sentences for two first-degree murder convictions. "[T]he repeal of parole eligibility standards previously available to an inmate implicates the Ex Post Facto Clause if the effect of the repeal is to impose a greater or more severe punishment than was proscribed by law at the time of the offense." *Kaylor v. Bradley*, 912 S.W.2d 728, 732 (Tenn.App.1995). Petitioner has only presented speculative claims such as he "had an expectation of release on parole when first eligible." (Pet. Br. at 8) Petitioner's Due Process and Equal Protection claims are also without merit. Tennessee prisoners have no liberty interests in parole requiring due process protection. *Wright v. Trammel*, 810 F.2d 589, 590 (6th Cir.1987). Lastly, Petitioner has not shown that parole was denied based on his membership in a constitutionally protected class.

On appeal, Mr. York makes the same assertions, all of which have been repeatedly rejected by the courts in Tennessee and elsewhere. He is in much the same position as was the appellant in *Dyer v. Tennessee Board of Paroles*, No. M1999-00787-COA-R3-CV, 2001 WL 401596 (Tenn.Ct. App. April 23, 2001) (appeal denied Sept. 17, 2001). In that case, Mr. Dyer had been convicted of two counts of first degree murder in 1975 and sentenced to death, with those sentences commuted to two consecutive life sentences in 1977. In 1993, and again in 1998, he was denied parole based upon the same grounds as parole was denied to Mr. York. After the 1998 denial of parole, his reconsideration was set for November of 2003. He filed a Petition for Common Law Certiorari making the same assertions as are now made by Mr. York. This Court held:

> The scope of review under a common law writ of certiorari is limited. The writ does not lie to review the intrinsic correctness of the trial court decision, and is only proper where the trial court has exceeded its jurisdiction, or acted illegally, fraudulently, or arbitrarily. *Arnold v. Tennessee Board of Paroles*, 956 S.W.2d 478, 480 (Tenn.1997). Relief under common law certiorari can be granted where the inferior tribunal has acted in an unlawful manner. *Powell v. Parole Eligibility Review Board*, 879 S.W.2d 871, 873 (Tenn.Ct.App.1994).

As the trial court held the merits of Petitioner's Application for Common Law Certiorari are effectively foreclosed by *Kaylor v. Bradley*, 912 S.W.2d 728 (Tenn.Ct.App.1995) and *Arnold v. Tennessee Board of Paroles*, 956 S.W.2d 478 (Tenn.1997). First of all, the trial court properly dismissed Charles Traughber, individually, as neither he or other individual members of the Tennessee Board of Paroles are proper parties defendant under Tennessee Code Annotated section 27-9-104.

Secondly, in making the assertion that he should be considered for parole under the law as it existed in 1974, rather than presently existing law, Mr. Dyer seeks the advantage of a superceded rule which provided: "The Board operates under the presumption that each resident who is eligible for parole is a worthy candidate and thus the Board presumes that he will be released on parole when he is first eligible." Tenn.Comp.R. & Regs. r. 1100-1-1.06 (superceded). This is exactly the position rejected in *Kaylor v. Bradley*, 912 S.W.2d 728 (Tenn.Ct.App.1995) which was applied by the trial court in this case.

Petitioner further asserts that statutes and regulations passed subsequent to 1974 have had the effect of diminishing his parole eligibility and thus cannot be applied ex post facto. The trial court answered this assertion persuasively:

> The Court is also persuaded by the respondent's argument that the current statutes have only changed the procedural framework within which the Board exercises its discretion to determine whether eligible candidates will be paroled. The current statutes do not affect the length of the petitioner's life sentences, do not change the application of sentence reduction credits to parole eligibility date and do not affect eligibility for parole consideration in any manner. In *Kaylor*, 912 S.W.2d at 732, the Tennessee Court of Appeals noted that the ex post facto clause is implicated only if the effect of the repeal is to impose a greater or more severe punishment than was proscribed by law at the time of the offense. What the petitioner complains about in the case at bar is that he no longer receives the presumption that he is a worthy candidate for parole and that he will be released on parole when he is first eligible. The change in that presumption is not imposition of a greater or more serious punishment than as proscribed by law at the time of the offense.

Petitioner complains that Tennessee Code Annotated section 40-35-503(b)(2), allowing the parole board to deny parole because of the seriousness of the offense for which he was convicted, is an ex post facto law. The Code section does not affect parole eligibility date or denial of parole, but instead enumerates one reason which the parole board may elect, in its discretion, to deny parole.

-3-

Next, the petitioner claims that use of 'the seriousness of the offense' reason for denying parole for a second time violates due process and amounts to double jeopardy. Such assertions have previously been made and rejected. *See Arnold v. Tennessee Board of Paroles*, 956 S.W.2d 478 (Tenn.1997) and *Mosley v. Tennessee Board of Paroles*, No. 01-A-01-9604-CH-00162, 1996 WL 631477 (Tenn.App. Nov. 1, 1996).

*Dyer*, 2001 WL 401596, at * 1-2. There is no merit to the allegations of Appellant attacking the action of the parole board in denying parole.

Subsequent to the appeal in this case, this Court issued its opinion in *Baldwin v. Tennessee Board of Paroles*, No. M2002-01428-COA-R3-CV, 2003 WL 21954199 (Tenn.Ct.App. Aug. 15, 2003). This Court agreed with the action of the trial court in dismissing Mr. Baldwin's Petition, which addressed, in large measure, the same issues asserted by Mr. York. This Court then addressed the action of the Board of Paroles in postponing a review of Mr. Baldwin's application for parole for twenty years, holding:

The grant of parole is a discretionary matter, vested exclusively in the Board of Paroles. *Doyle v. Hampton*, 207 Tenn. 399, 340 S.W.2d 891 (Tenn.1960). Decisions of the Board are not reviewable by the courts, if done in accordance with the law. Tenn. Code Ann. § 40-28-115(c); *Flowers v. Traughber*, 910 S.W.2d 468 (Tenn.Crim.App.1995). The question of whether such decisions are lawful is subject to limited review, however, under the common law Writ of Certioriari. (sic)

As we have stated on many occasions, the scope of review under the writ is limited to an examination of whether the Board exceeded its jurisdiction, or acted illegally, fraudulently or arbitrarily. *Turner v. Tennessee Board of Paroles*, 993 S.W.2d 78 (Tenn.Ct.App.1999); *Powell v. Parole Eligibility Review Board*, 879 S.W.2d 871 (Tenn.Ct.App.1994); *Yokley v. State*, 632 S.W.2d 123 (Tenn.Ct.App. 1981).

Both versions of the rule at issue state that "if the case is continued or parole denied, a future hearing date shall be specified," with the one year requirement deleted from the amended rule. The state's argument implies that the amended rule grants the Board absolute and unbridled discretion over the timing of subsequent hearings. It appears to us, however, that the statutes relating to the Board of Paroles do not support this interpretation.

Tenn.Code Ann. § 40-28-116(a)(1) establishes the right of the Board of Paroles over prisoner release: "The board has the power to cause to be released on parole any person who has been declared eligible for parole consideration by the board." Further, "[i]t is also the duty of members of the board to study the prisoners confined in the prisons, workhouses and jails when they are eligible for parole

consideration so as to determine their ultimate fitness to be paroled." Tenn.Code Ann. § 40-28-118(d).

The grounds for parole are set out in Tenn.Code Ann. § 40-28-117, which reads in part,

(a) Parole being a privilege and not a right, no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board is of the opinion that there is reasonable probability that such prisoner, if released, will live and remain at liberty without violating the law, and that the prisoner's release is not incompatible with the welfare of society . . . .

Tenn.Code Ann. § 40-35-503(b)(2) and (3) set out grounds for declining parole because of the detrimental effects of releasing the prisoner "at the time." The thrust of these statutes, and indeed of the whole concept of parole, is that over time people can change, and that even a convicted felon may be able to live in accordance with the law, if he or she is released before the end of his sentence. Further, the determination of when a prisoner is ready to be released is not an easy one, and the provision for periodic hearings gives the Board the opportunity to re-evaluate its own decisions. Finally, Mr. Baldwin implies that private conversations with the victims of his crime, conducted before his parole hearing, had a significant impact on the Board's decision. We venture to think it possible that even these victims may experience a change of heart at some point, and not insist on his continued incarceration.

We note that the seven Board members are appointed for staggered six year terms, after which they are eligible for (but not necessarily entitled to) reappointment. Tenn.Code Ann. § 40-28-103(c). Thus the effect of the twenty-year deferral is not only to preclude reconsideration of Mr. Baldwin's case by the members of the panel that declined to parole him, or by the other members of the current Board, but also to prevent the members of the Board that may be sitting in the years 2005, 2010, 2015 or 2020 from even making an initial consideration of whether Mr. Baldwin could be a suitable candidate for parole. Under the panel's ruling, it is possible that the entire membership of the Board can completely turn over more than once before his case comes up for decision once again.

It appears to us that the Board's decision constitutes an arbitrary withdrawal of the power to parole from future Board members, and that a twenty-year deferral would undermine the very provisions of the parole statutes that empower the Board to grant parole. In addition, the essential effect of the Board's action is to change Mr. Baldwin's sentence to life without parole, contrary to what the Legislature intended. We think Mr. Baldwin has stated a cause of action which entitles him to the writ of

certiorari.  Therefore, we reverse the chancellor's order dismissing his claim that the Board acted arbitrarily in deferring the next consideration of parole for him for twenty years.

*Baldwin*, 2003 WL 21954199, at * 4-5.

All one has to do is substitute ten years for twenty years and we have the same situation relative to its application to Mr. York.  As in *Dyer*, nothing prohibits the Board of Paroles from, again, denying parole if such would depreciate the seriousness of the crime of which Mr. York stands convicted.  Such a determination is within the sound discretion of the Board and not a matter for judicial intervention.  Appellant has served more than a quarter of a century of his sentence and is now eligible for parole consideration.  To again reject his application is one thing, but to postpone a review of his application for a decade is, while less arbitrary than in *Baldwin*, still an arbitrary decision.  As to this issue, Mr. York is entitled to the writ of certiorari.

Since *Baldwin* post-dated the appeal in this case, this issue was not before the trial court, and, as a general rule, an issue not presented to the trial court will not be considered by this Court.  *Reid v. State*, 9 S.W.3d 788, 796 (Tenn.Ct.App.1999).  However, under Tennessee Rule of Appellate Procedure 13(b) and 36(a), we may consider such issues in the interest of fairness and justice.  *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 916 (Tenn.Ct.App.2000).

The Order of the trial court denying parole to Appellant, insofar as it dismisses the Petition on the merits of the hearing before the Parole Board of July 3, 2001, is affirmed.  The action of the Board, however, in deferring the next consideration of parole for a period of ten years is reversed, and the cause is remanded to the Chancery Court of Davidson County for further proceedings consistent with this opinion.  Costs on appeal are taxed to the Tennessee Board of Paroles.

_____

WILLIAM B. CAIN, JUDGE