IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 10, 2003 Session

# SAMMY MILLER v. TENNESSEE BOARD OF PROBATION AND PAROLES

**Appeal from the Chancery Court for Davidson County**
**No. 01-2807-III      Ellen Hobbs Lyle, Chancellor**

---

**No. M2002-00426-COA-R3-CV - Filed May 8, 2003**

---

The Board of Paroles declined to parole a prisoner in the custody of the Department of Correction. He claimed that the Parole Board violated the constitutional prohibition against ex post facto laws by following a different procedure to reach its decision than was in effect at the time of his crime. The trial court dismissed the prisoner's complaint for failure to state a claim for which relief can be granted. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J. and VERNON NEAL, SP. J., joined.

Patrick T. McNally, Nashville, Tennessee, for the appellant, Sammy Miller.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Pamela S. Lorch, Assistant Attorney General, for the appellee, Tennessee Board of Probation and Parole.

## OPINION

### I. A PAROLE HEARING

Sammy Miller was convicted of first degree murder in 1977 and sentenced to death. In 1979, the Tennessee Supreme Court reduced his sentence to life imprisonment, holding that the procedure in effect for imposing the death penalty at the time of Mr. Miller's crime did not meet the requirements of the Tennessee constitution. *See Miller v. State*, 584 S.W.2d 758 (Tenn. 1979).

Mr. Miller eventually became eligible for parole. On May 1, 2001, he appeared at a parole eligibility hearing before two members of the Tennessee Board of Probation and Parole. One of the

Board members voted to release Mr. Miller on parole subject to special conditions, while the other voted to deny parole release, due to the seriousness of his offense.

Over the next ten days, five other Board members cast their votes on Mr. Miller's parole application. Three voted to deny parole, and two voted to release Mr. Miller. Thus, the tally after all Board members had voted was three in favor of parole and four against. Parole was denied, and the prisoner's next parole hearing was scheduled for May of 2006. Mr. Miller subsequently filed an administrative appeal of the Parole Board's decision, alleging significant procedural errors. The allegations were reviewed, and the appeal denied.

## II. PROCEEDINGS IN THE TRIAL COURT

On September 7, 2001, Mr. Miller filed a complaint in the Chancery Court of Davidson County, asking the court for a Writ of Certiorari to review the decision of the Parole Board. He contended that at the time of his crime, a prisoner could be released on parole if three Parole Board members voted in favor. However, in 1997 the legislature enacted an amendment to the parole statute to require the concurrence of four Board members for release on parole of prisoners convicted of any of twenty-six specified offenses. First degree murder was one of those offenses. *See* Tenn. Code Ann. § 40-28-105(d)(4) [Acts 1997 ch. 488 § 1].

Mr. Miller argued that he was entitled to the benefit of the parole procedures that were in effect at the time of his crime and of his conviction, and that the application of the 1997 statute to him was a violation of his substantive right to be protected against ex post facto laws. The Board filed a motion to dismiss on the ground of failure to state a claim for which relief can be granted. *See* Rule 12.02(6), Tenn. R. Civ. P. After a hearing, the chancellor filed a Memorandum and Order on February 4, 2002. The court dismissed Mr. Miller's complaint, holding that the amendment to Tenn. Code Ann. § 40-28-105 was merely a procedural change which did not implicate the prohibitions against ex post facto laws. This appeal followed.

## III. ISSUES ON APPEAL

### A. THE BREADTH OF THE EX POST FACTO CLAUSE

Both the Tennessee and United States constitutions prohibit the enactment of ex post facto laws. Tenn. Constitution, Article 1, Section 11; U.S. Constitution, Article I, § 10, clause 1. A very early case of the United States Supreme Court contains a definition of ex post facto laws that is still relied upon by our courts, including the court that vacated Mr. Miller's death sentence:

"1st. Every law that makes an action done before the passing of the law; and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence,

and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender."

*Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798), quoted in *Kaylor v. Bradley* 912 S.W.2d 728, 731-732 (Tenn. Ct. App. 1995). *See also Miller v. State,* 584 S.W.2d 758, 761 (Tenn.1979).

The appellant argues that the statutes that were in place to regulate the operations of the Board of Paroles at the time of his offense were a part of the punishment annexed to his crime, and that Tenn. Code Ann. § 40-28-105(d)(4) inflicts a greater punishment on him than the law allowed at that time, by making it more difficult for him to be paroled.

He also claims the benefit of a more general definition of ex post facto laws, which our Supreme Court used in the very case in which his death sentence was vacated: "[e]very law, which, in relation to the offense or its consequences, alters the situation of a person to his disadvantage." 584 S.W.2d at 761. *See also Lynce v. Mathis,* 519 U.S. 433 (1997).

Notwithstanding this broad language, federal and state courts have made it clear that not every change in the laws that may operate to the disadvantage of a given defendant are in violation of the ex post facto prohibition, even if they were enacted after the commission of his crime. As the United States Supreme Court said in *Dobbert v. Florida*, 432 U.S. 282 (1976),

"[T]he constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation, and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance. . . . Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto."

432 U.S. at 293.

We note that in a case specifically involving parole procedures, *California Department of Corrections v. Morales,* 514 U.S. 499 (1995), the United States Supreme Court declared that a California statute which reduced the frequency of parole hearings for prisoners convicted of certain crimes did not violate the ex post facto clause in regard to a prisoner who was convicted prior to amendment.

The Court stated that too expansive an interpretation of the ex post facto clause would necessarily involve it in the "micromanagement of an endless array of legislative adjustments to parole and sentencing procedures." The court reasoned that such adjustments might create "some speculative attenuated risk of affecting a prisoner's actual term of confinement," but that such a risk was not an adequate justification for bringing the ex post facto provision into play.

This does not mean that no possible change to the parole statutes can invoke the ex post facto clause. But as this court said in *Kaylor v. Bradley* 912 S.W.2d 728 (Tenn. Ct. App. 1995), when

analyzing ex post facto claims, "[t]he outcome depends on the significance of the right involved and the significance of the impairment. In close questions, the decisions oftentimes hinge on such subtle factors as the court's sense of fair play and justice." 912 S.W.2d at 732.

In the present case, we believe that Mr. Miller's argument addresses a matter of procedure only, and one which is within the legitimate purview of the legislature. While he may be disappointed by the Parole Board's action, we do not believe the manner in which it reached its decision violated any of his constitutional rights. *See Harris v. Traughber*, No. M2000-01146-COA-R3-CV (Tenn. Ct. App. July 13, 2001).

## B. A PARTIAL HISTORY OF THE PAROLE STATUTES

Appellant argues that the present case does not involve some merely speculative or attenuated risk of affecting his term of confinement. He contends that if the unamended three-vote provision had been applied, he would already be free, since three of the seven Board members voted to release him. This argument is doubtful at best, as the somewhat convoluted history of the laws of parole in this state demonstrates.

Even a cursory examination of the legislative enactments relating to parole reveals just such a process of continuous adjustments as the United States Supreme Court described in *California Department of Corrections v. Morales,* supra. Any attempt to tailor the procedures of the Parole Board for each prospective parolee, so as to make them to conform to the laws in effect at the time of each prospective parolee's crime would involve the Parole Board in an administrative nightmare, and the courts in the very micromanagement the Supreme Court sought to avoid.

In 1937 the Legislature created a Division of Pardons, Paroles and Probation with three members and ten field officers. [Acts 1937, ch. 276 § 2]. In 1949 and 1961 the Legislature made relatively minor revisions to the 1937 statute, [Acts 1949, ch. 18 §§ 1-3 and Acts 1961, ch. 93 § 1] with the 1961 enactment adding the phrase "parole being a privilege and not a right," to the statute. In 1963 the Parole Board was made a division of the Department of Correction, and its membership was increased to five, with the Commissioner of Correction as chairman. [Acts 1963, ch. 288 § 1]. A 1970 amendment declared, however, that the five members would be appointed by the governor. [Acts 1970, ch. 488 § 1].

A 1972 statute reduced the composition of the Board to its former size of three members. [Acts 1972, ch. 636 §§ 1-8]. It also appears to be the first enactment to state that release on parole would require a majority vote of the entire membership. In 1978 the Board was again increased to five members, with three declared a quorum for transacting business. [1978 Acts, ch. 929 § 6]. A 1979 statute declared that the five members had to vote "by public ballot or public roll call, not by secret ballot or secret roll call." Further, no parole could be granted "except by majority vote of the entire board." [Acts 1979, ch. 359 §§ 5, 26].

A 1988 enactment declared that "no person shall be paroled . . . without the concurrence of three (3) board members." [Acts 1988, ch. 880 § 3]. In 1989 the Board's membership was increased to seven. [Acts 1989, ch. 506 §§ 1-2]. As the appellant noted, in 1997 the legislature ratified the previous requirement that three members agree on parole, except for 26 specific offenses, where the concurrence of four members was required. [Acts 1997, ch. 488 § 1].

It thus appears that if we wished to give Mr. Miller the benefit of the parole statute in effect at the date he committed his offense (April 7, 1976), he would have to receive the affirmative votes of a majority of a three member Board, rather than three out of seven votes by the members of a larger Board. How this could possibly be accomplished, we do not know, but it is apparent to us that if we followed the theory he is advocating, the whole system of parole would become unworkable.

## C. TENN. CODE ANN. § 40-35-117

Mr. Miller seeks to bolster his argument by reference to Tenn. Code Ann. § 40-35-117 of the Prisoner Sentencing Reform Act of 1989, which reads:

> (a) All persons who commit crimes on or after November 1, 1989, shall be tried and sentenced under the provisions of this chapter.
> (b) Unless prohibited by the United States or Tennessee constitution, any person sentenced on or after November 1, 1989, for an offense committed between July 1, 1982 and November 1, 1989, shall be sentenced under the provisions of this chapter.
> (c) For all persons who committed crimes prior to July 1, 1982, prior law shall apply and remain in full force and effect in every respect, including, but not limited to, sentencing, parole and probation.

The appellant argues that this law creates a statutory imperative that entitles him to the benefits of the statutorily-mandated parole procedures in effect at the time of his crime. As we noted above, even if we agreed with this argument, it is doubtful that Mr. Miller would be entitled to the relief he seeks.

But in any case, we believe the argument is misplaced. The sentencing statutes themselves have long included provisions for determining what proportion of a maximum sentence an offender must serve before becoming eligible for release. Eligibility for parole consideration is normally part of the law annexed to the crime when committed, and thus a change of parole eligibility standards to the possible detriment of prisoners sentenced under the earlier law may implicate ex post facto concerns. *Jaami v. Conley*, 958 S.W.2d 123 (Tenn. Ct. App. 1997); *Kaylor v. Bradley*, 912 S.W.2d 728 (Tenn. Ct. App. 1995). *See also Gilbreth v. Bradley*, No. 01-A-01-9402-CH-00083 (Tenn. Ct. App. Sept. 21, 1994).

But parole itself stands on a different footing than parole eligibility. There is no constitutional (or statutory) right to be paroled from a validly imposed sentence of imprisonment. *Wells v.*

*Tennessee Bd. of Paroles*, 909 S.W.2d 826 (Tenn. Ct. App. 1995); *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1 (1979). Further, the grant of parole in Tennessee is a discretionary matter, vested exclusively in the Board of Paroles. *Doyle v. Hampton*, 340 S.W.2d 891 (Tenn. 1960). Though the Board is charged with following the procedures set out by statute for determining parole questions, we do not believe that those specific procedures should themselves be considered a part of the law annexed to a prison sentence at the time of sentencing.

## IV.

The order of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Sammy Miller.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.