IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 7, 2005

## DONALD MOORE v. TENNESSEE BOARD OF PROBATION AND PAROLE

**Appeal from the Chancery Court for Davidson County**
**No. 03-2239-II      Carol McCoy, Chancellor**

**No. M2003-03110-COA-R3-CV - Filed May 2, 2005**

Following a hearing in October of 2000, three out of seven members of the Board of Paroles voted to parole a prisoner who was serving a life sentence for murder. Because of a 1997 statute that requires four members of the Board to concur on the parole of prisoners convicted of certain grave offenses, parole was denied. The prisoner did not seek review of that decision. Parole was again denied after a March 2003 hearing, with only two Board members voting for parole. The prisoner filed a petition for common law writ of certiorari, contending that the Board's refusal to release him after the 2000 Board vote violated the constitutional prohibition against *ex post facto* enactments. He argued that he was entitled to the benefit of an earlier statute which allowed prisoners to be paroled, regardless of offense, if they could obtain the positive votes of three members of the Board. The trial court dismissed the petition, holding that it was untimely, and that in any case, the application of the 1997 statute did not implicate any *ex post facto* concerns. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S. and FRANK G. CLEMENT, JR., J., joined.

David L. Raybin, Nashville, Tennessee, for the appellant, Donald Moore.

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, Pamela S. Lorch, Senior Counsel, for the appellee, Tennessee Board of Probation and Parole.

**OPINION**

Donald Moore was sentenced to death for a first degree murder he committed on September 30, 1977. The Tennessee Supreme Court reversed the sentence of death in 1981 because of an erroneous jury instruction and remanded the case to the trial court for another sentencing hearing. *State v. Moore*, 614 S.W.2d 348 (Tenn. 1981). On remand, Mr. Moore was sentenced to life in prison.

In October 2000, Mr. Moore had a parole hearing before the Board of Probation and Parole ('Board').[1] A notice of the outcome of that hearing, dated November 6, 2000, reflected that he received three affirmative votes for parole, but parole was denied because he did not receive the four affirmative votes required for first-degree murderers and certain other offenders under Tenn. Code Ann. § 40-28-105(d)(3), which had been enacted in 1997. He did not file an administrative appeal of the Board's action. In March 2003, the Board again reviewed Mr. Moore for parole and conducted another hearing. Mr. Moore received only two votes, and parole was again declined.[2] This time, the prisoner did file an administrative appeal to the Board, which was denied.

On August 4, 2003, Mr. Moore filed a Complaint for Writ of Certiorari in the Chancery Court of Davidson County. He contended that the Board's order denying him parole in the year 2000 was based upon a statute which, by increasing from three to four the number of votes necessary for a grant of parole, violated the constitutional prohibition against *ex post facto* laws.

---

[1] The facts set out in this opinion are taken from the complaint and exhibits attached thereto. Those exhibits include documents that are part of the administrative record of the proceedings before the Board. Generally, in a common law writ of certiorari proceeding, the entire administrative record is certified by the board or commission and filed with the court pursuant to a grant of the writ. Tenn. Code Ann. § 27-9-109 (stating that upon the grant of the writ the board or commission shall cause a complete transcript, containing all the proof submitted, of the proceedings before it to be made, certified, and forwarded to the court). In the case before us, the court did not issue the writ and the Board did not file a certified record of all the proceedings before it. Instead, the Board filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Tenn. R. Civ. P. 12.02. Consequently, we must take the facts stated in the petition as true except as to facts contradicted by the record. *Gore v. Tennessee Dep't. of Correction*, 132 S.W.3d 369, 373 (Tenn. Ct. App. 2003). Since no record was filed, no facts alleged in the petition have been contradicted. The Board did not object to consideration of any of the exhibits to the complaint and did not dispute their accuracy or authenticity; instead, the Board referred to and relied upon the exhibits. To the extent the exhibits were relied on by the trial court, their consideration does not trigger conversion of the motion to a Rule 56 motion for summary judgment. *Lee v. State Volunteer Mutual Ins. Co., Inc.*, No. E2002-03127-COA-R3-CV, 2005 WL 123492 (Tenn. Ct. App. Jan. 21, 2005). Because the Board does not object to this court's consideration of the exhibits, because the Board did not file the entire certified record of the proceedings before it, and because the parties essentially agree there are no factual disputes, we will rely on the exhibits and the complaint in reviewing the grant of the Board's motion to dismiss.

[2] The documents attached as an exhibit to the complaint indicate that all seven members of the Board voted in 2000, with four voting to deny parole due to the seriousness of Mr. Moore's offense. Again according to an exhibit, in 2003, one Board member recused himself, so only six voted, with two voting to parole Mr. Moore and four voting against.

-2-

The Board filed a motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(6) for failure to state a claim, citing both procedural and substantive grounds. The prisoner's attorney subsequently asked the court to postpone any decision on his client's case for the sake of judicial economy. He noted that the identical *ex post facto* issue he was presenting was pending before the Tennessee Supreme Court, and he promised to apprise the court of the Supreme Court's ruling as soon as it was released.

However, the trial court found it possible to rule on Mr. Moore's case without having to reach the substantive issue. The court noted that the prisoner had not filed his complaint for writ of certiorari until almost three years after he was denied parole on the basis of the four-vote statute. Since a petition for common law writ of certiorari must be filed within sixty days of the order it is challenging, the trial court dismissed the petition for untimeliness.

Mr. Moore filed a Motion to Alter or Amend. He contended that his complaint should not be considered untimely because the Board had continuing authority to release him after his first parole hearing. He reasoned that the sixty days should not be deemed to have begun to run after the first denial of parole, nor after March 18, 2003, when he was denied parole for the second time, but on June 13, 2003, when his administrative appeal was finally denied.

The prisoner's attorney subsequently notified the court that the Tennessee Supreme Court had acted in the case with the same issue. In that case, Sammy Miller, a prisoner similarly situated to Mr. Moore, had challenged the Board's decision not to grant him parole on grounds identical to those presented by Mr. Moore. The trial court had ruled against Mr. Miller, and the Court of Appeals had affirmed the trial court. *Miller v. Tennessee Board of Probation and Parole*, 119 S.W.3d 696 (Tenn. Ct. App. 2003). Mr. Miller had then filed a Tenn. R. App. P. 11 application for permission to appeal to the Tennessee Supreme Court. His application was pending during the proceedings in Mr. Moore's case. On October 27, 2003, the Supreme Court denied Mr. Miller's application.

Armed with this new information, the trial court filed an amended order on November 26, 2003. The court analyzed and rejected the prisoner's new argument as to timeliness and ruled that, in any case, this court's decision in *Miller* foreclosed his *ex post facto* argument. This appeal followed.

## I. THE QUESTION OF TIMELINESS

Prisoners do not have an absolute right to be released from confinement prior to the expiration of their sentence. *Graham v. State*, 202 Tenn. 423, 426, 304 S.W.2d 622, 623-24 (1957); *Robinson v. Traughber*, 13 S.W.3d 361, 364 (Tenn. Ct. App. 1999); *Tarpley v. Traughber*, 944 S.W.2d 394, 395 (Tenn. Ct. App. 1996). Thus, parole is a privilege and not a right. Tenn. Code Ann. §§ 40-28-117(a), 40-35-503(b); *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478, 482 (Tenn. 1997). Whether a prisoner should be granted parole is a decision entrusted to the Board, not the courts. *State ex. rel. Ivey v. Meadows*, 216 Tenn. 678, 685, 393 S.W.2d 744, 747 (1965); *Rucker v. State*, 556 S.W.2d 774, 776 (Tenn. Crim. App. 1977). Consequently, decisions of the Board of

Paroles whether to grant or deny parole to an individual are not reviewable by the courts if done in accordance with the law. *Flowers v. Traughber*, 910 S.W.2d 468, 470 (Tenn. Crim. App.1995).

The question of whether such decisions are lawful is subject to limited review under the common law writ of certiorari. *Baldwin v. Tennessee Bd. of Paroles,* 125 S.W.3d 429, 433 (Tenn. Ct. App. 2003); *Flowers*, 910 S.W.2d at 470. Thus, persons dissatisfied with a decision of the Board may obtain judicial review using the procedures set out in Tenn. Code Ann. § 27-9-101 *et seq.*, which provide for review of a decision by a board or commission through the common law writ of certiorari. The common law writ of certiorari limits the scope of judicial review, and a court may grant relief under the writ only if it finds that the board or commission has exceeded its jurisdiction or that it has acted illegally, arbitrarily or fraudulently. *Blackmon v. Tennessee Bd. of Paroles*, 29 S.W.3d 875, 878 (Tenn. Ct. App. 2000); *Turner v. Tennessee Bd. of Paroles*, 993 S.W.2d 78, 80 (Tenn. Ct. App. 1999); *South v. Tennessee Bd. of Paroles*, 946 S.W.2d 310, 311 (Tenn. Ct. App. 1996); *Powell v. Parole Eligibility Review Board*, 879 S.W.2d 871, 873 (Tenn. Ct. App.1994).

A party aggrieved by "any final order or judgment" of the Board may seek review by filing a petition for common law writ of certiorari within sixty days of entry of the final order that the petition challenges. Tenn. Code Ann. §§ 27-9-101 and -102; *Wheeler v. City of Memphis,* 685 S.W.2d 4, 6 (Tenn. Ct. App. 1984). Failure to file within the statutorily mandated time requires dismissal of the petition. *Gore*, 132 S.W.3d at 379; *Hickman v. Tennessee Bd. of Paroles*, 78 S.W.3d 285, 289 (Tenn. Ct. App. 2002) (holding that failure to file within the sixty day limit caused a party to forfeit his or her right to judicial review and required the court to decline to exercise jurisdiction, rather than depriving the court of subject matter jurisdiction); *Johnson v. Metropolitan Gov't. of Nashville and Davidson County*, 54 S.W.3d 772, 774-75 (Tenn. Ct. App. 2001) (holding that expiration of the sixty day time limit deprived the court of subject matter jurisdiction); *Thandiwe v. Traughber*, 909 S.W.2d 802, 803-804 (Tenn. Ct. App. 1994) (holding that failure to comply with the sixty day statute of limitations results in the loss of jurisdiction by the trial court). Essentially, an order which is not timely challenged becomes final and is not reviewable. *Thandiwe*, 909 S.W.2d at 804.

In the present case, the Board of Paroles denied parole to Mr. Moore in November of 2000, despite three votes in favor of parole. He did not file his complaint for writ of certiorari until August 4, 2003. Obviously, the complaint was not filed within sixty days of the November 2000 decision. A petition for writ of certiorari seeks review of a particular final order or judgment of a board or commission. Tenn. Code Ann. § 27-9-101. The petition must set forth "the substance of the order or judgment complained of" as well as "the respects in which the petitioner claims the order or judgment is erroneous." Tenn. Code Ann. § 27-9-102. The sixty days for challenging a particular order runs from entry of that order.[3] *Id.*

---

[3] A person denied parole may seek an administrative appeal from such denial, and "[t]he decision rendered after an appellate review will be final." Tenn. Code Ann. § 40-28-105(d)(11). Consequently, where a timely administrative appeal is pursued, the sixty days within which to file a petition for judicial review under the writ of certiorari begins to run upon entry of the final decision from the administrative appeal.

-4-

In the case before us, the petition alleges that the Board's refusal to release Mr. Moore on parole despite his obtaining three votes in favor of parole was unlawful and arbitrary because it unconstitutionally applied the four-vote statute retrospectively in violation of the *ex post facto* prohibition. It is clear that Mr. Moore was challenging the denial of parole in the November 2000 order since that is the only time he received three affirmative votes. His petition for writ of certiorari challenging that order was, consequently, untimely and was properly dismissed.

Mr. Moore argued in the trial court and in this court that his complaint was timely. First, he asserts that the Board has the continuing authority to release him on parole, *see* Tenn. Code Ann. § 40-28-116(a), and that he should already have been released on parole because he received three affirmative votes for parole. Therefore, he asserts, the question is whether he should now be on parole. While these assertions may be relevant to Mr. Moore's standing in another type of action, in a common law writ of certiorari proceeding a particular order by the Board must be challenged within sixty days of that order. Mr. Moore did not challenge the November 2000 denial of parole within the statutory time limit.

Mr. Moore also asserts that the sixty days began to run June 13, 2003, the date that his administrative appeal of the Board's decision of March 18, 2003 was denied, and his petition was therefore timely.[4] In support of that assertion, he argues that the 2003 parole hearing was a continuation of the hearing in 2000 because the members voting against parole voted to review the case again in October of 2002, although that review did not occur until March of 2003. In response, the Board refers to the Notice of Board Action that was attached to Mr. Moore's complaint and states that the members voting against parole in 2000 did not mark a box in the section labeled "Continue/Reschedule." Instead, they each marked the box entitled "Rejected" and wrote "(DS) Review 10-2002 (SO)." The form defines those terms. "DS" means the parole was declined; "SO" refers to the justification of denial based on the seriousness of the offense. We agree with the Board that the form itself does not support Mr. Moore's argument that the March 2003 hearing was simply a continuation of his earlier parole hearing.

The argument that any later parole hearing is a continuation of an earlier hearing where the Board made a decision is inconsistent with the relief sought by means of a petition for common law writ of certiorari, which is available to review the legality of a final order of the Board. If the possibility of a future parole, after future review, rendered any decision to decline parole less than final, the writ could never be issued to review decisions to deny parole. It is unlikely that any person denied parole would argue that such denial is unreviewable because it is not final. Such a decision may be challenged by timely filing of a petition for common law writ of certiorari even though the possibility of parole in the future after another hearing still exists. In this case, the Board's 2000

---

[4]The Board does not argue that an administrative appeal filed pursuant to the procedures established for such appeals does not toll the running of the sixty day limit or that, in that situation, the sixty days does not run from the decision denying the appeal. Thus, the Board does not argue that the complaint herein was untimely because it was filed more than sixty days after the Board's denial of parole in March of 2003. Rather, the Board argues that it was untimely because it was not filed within sixty days of the November 2000 decision.

decision not to release Mr. Moore despite his receiving three affirmative votes for parole was a final decision of the Board.

Finally, Mr. Moore argues that the Board's denial of his administrative appeal was the final decision on his *ex post facto* claim. He supports this argument by reference to a June 13, 2003, letter to his counsel attached to his complaint which he identifies as the Board's denial of his administrative appeal.[5] That letter, from the Board's general counsel, responds to a letter from Mr. Moore's counsel and forwards a copy of the *Miller* opinion. The letter states that *Miller* "does have bearing on cases now before the Board" and holds that the four-vote statute is "legal and binding." It concludes:

> Therefore, the decision in the case of your client, Donald Moore, is final and there will be no further consideration by the Board of Mr. Moore's previous parole hearing.

The letter indicates that Mr. Moore's counsel raised the *ex post facto* argument in his administrative appeal,[6] and the Board ruled against him. These facts, however, do not affect the lack of timeliness. The only time Mr. Moore received three votes for parole, a necessary predicate for standing to challenge the four-vote statute, was in the 2000 hearing. The 2003 hearing did not result in three votes in his favor, so he was in no position to insist upon application of the 1988 statute that required only three affirmative votes for parole regardless of the offense. His effort to get the Board to revisit the result of his 2000 hearing does not alter the fact that the November 2000 denial of parole was a final order subject to review within sixty days.

We affirm the trial court's dismissal on the basis of untimeliness. In addition to finding the petition untimely, the trial court also addressed the merits of Mr. Moore's *ex post facto* claims. We shall do the same.

## II. THE *MILLER* CASE

Even if Mr. Moore's complaint had been timely in regard to the board's 2000 decision, he would still not be entitled to the relief he seeks. As explained above, all the proceedings in this case were conducted within the shadow of an earlier-filed case with almost identical facts, *Miller v. Tennessee Board of Probation and Parole*, 119 S.W.3d 696, and that holding determines the outcome of this appeal.

Sammy Miller was convicted of murder in 1976 and sentenced to death. In 1979, the Supreme Court reduced his sentence to life imprisonment because a majority of the court found the

---

[5]The Board does not dispute that the letter was the denial of administrative appeal.

[6]Although the complaint indicates this document is attached, it does not appear in the appellate record.

death penalty statute under which he was sentenced to be constitutionally infirm. *State v. Miller*, 584 S.W.2d 758 (Tenn. 1979).

In 2001, Mr. Miller had a parole hearing. Three board members voted to grant him parole, and four voted to deny parole. The prisoner then filed a timely petition for writ of certiorari, arguing, as Mr. Moore does, that the application of the four-vote requirement to him was a violation of the constitutional prohibition against *ex post facto* laws. The trial court dismissed the petition, holding that the amendment to Tenn. Code Ann. § 40-28-105 was merely a procedural change, with no constitutional implications. *See California Dep't. of Corr. v. Morales*, 514 U.S. 499, 115 S. Ct. 1597 (1995).

On appeal, this court carefully analyzed Mr. Miller's arguments and concluded that his constitutional argument was unavailing and that he was not entitled to the relief he sought. Relying on *Morales*, we held that the change in the number of votes required was one of procedure only and within the purview of the legislature. Consequently, there was no violation of Mr. Miller's constitutional rights. 119 S.W.3d at 699. Additionally, we discussed the reluctance of the courts to involve themselves in the micromanagement of legislative adjustments to parole procedures, again relying on language in *Morales*. After the Tennessee Supreme Court denied Mr. Miller's application for permission to appeal, this court's opinion in *Miller* was published in the official reporter. Thus, unless and until the *Miller* holding is reversed, it is a binding determination that it is not unconstitutional to apply the four vote requirement for parole to offenders who committed the crimes listed in Tenn. Code Ann. § 40-28-105(d)(3). *See* Tenn. R. S. Ct. 4(H)(2).

Mr. Moore's situation is the same as Mr. Miller's. He was convicted of a crime committed in 1977. The reasoning and result of *Miller* apply to Mr. Moore. Mr. Moore's attorney recognizes that our decision in the *Miller* case is now binding precedent for the dispositive issue in the present case. He nonetheless urges us to find that the parole board's application of the four vote provision of Tenn. Code Ann. § 40-28-105(d)(3) was unconstitutional in his client's case.[7]

We stand by both our reasoning and our holding in the *Miller* case,[8] find Mr. Moore's arguments to be without merit, and affirm the trial court. We feel, however, that some additional discussion of the issue is warranted.

---

[7] He candidly admits that the purpose of the current appeal is to join other individuals, including Mr. Miller, who are preparing to seek federal review of this issue.

[8] This court reached the same conclusion in other cases decided before *Miller. See Phifer v. Tenn. Bd. of Parole*, No. M2000-01509-COA-R3-CV, 2002 WL 31443204 (Tenn. Ct. App. Nov. 1, 2002)(no Tenn. R. App. P. 11 application filed); *Harris v. Traughber*, No. M2000-01146-COA-R3-CV, 2001 Tenn. App. LEXIS 490 (Tenn. Ct. App. July 13, 2001) (no Tenn. R. App. P. 11 application filed)

## III.

The *ex post facto* prohibition is "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *Morales*, 514 U.S. at 504, 115 S. Ct. at 1601. An *ex post facto* law "changes the punishment, and inflicts a greater punishment than **the law annexed to the crime when committed**." *Weaver v. Graham*, 450 U.S. 24, 32-33, 101 S. Ct. 960, 966 (1981) (emphasis added). The critical question in an *ex post facto* claim is "whether the law changes the punishment to the defendant's disadvantage, or inflicts a greater punishment than the law allowed when the offense occurred." *State v. Pearson*, 858 S.W.2d 879, 883 (Tenn. 1993).

Under both state and federal constitutions[9] and cases interpreting them, two factors must be present to establish a violation of the *ex post facto* prohibition: (1) the law must apply retrospectively to events occurring before its enactment; and (2) it must disadvantage the offender affected by it. *State v. Ricci*, 914 S.W.2d 475, 480 (Tenn. 1996); *Pearson*, 858 S.W.2d at 882 (quoting *Miller v. Florida*, 482 U.S. 423, 430, 107 S. Ct. 2446, 2451 (1987)); *Kaylor v. Bradley*, 912 S.W.2d at 728, 732 (Tenn. Ct. App. 1995).

Actions which extend parole eligibility by altering the criteria for such eligibility can implicate the *ex post facto* clause because eligibility for parole consideration is part of the law annexed to the crime when committed. *Lynce v. Mathis*, 519 U.S. 433, 445, 117 S. Ct. 891, 898 (1997); *Kaylor*, 912 S.W.2d at 732 (citing *Weaver*, 450 U.S. at 32-33, 101 S. Ct. at 966). However, eligibility for parole is not implicated in the case before us. "Even if a law operates to the defendant's detriment, the *ex post facto* prohibition does not restrict 'legislative control of remedies and modes of procedure which do not affect matters of substance.'" *Miller*, 482 U.S. at 433, 107 S. Ct. at 2452 (quoting *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S. Ct. 2290, 2298 (1977)).

The principle on which *ex post facto* prohibitions are based is one of fairness. Individuals have a right to fair warning of the conduct which will give rise to criminal penalties. *Marks v. United States*, 430 U.S. 188, 87 S. Ct. 990, 51 L.Ed.2d 260 (1977). This includes the right to fair warning of the nature and severity of the possible penalties involved.

> Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.

*Weaver*, 450 U.S. at 30-31, 101 S. Ct. at 965.

---

[9]The United States Constitution, Article I, Section 10 forbids the states from passing any *ex post facto* laws. The Constitution of Tennessee, Article I, Section 11 contains a similar prohibition. The interpretations by the United States Supreme Court of the federal constitutional provision and those of the Tennessee Supreme Court of the state constitutional provision are complementary and consistent. *Kaylor v. Bradley*, 912 S.W.2d 728, 731 (Tenn. App. 1995).

Mr. Moore's real objection is to the legislative change in 1997 from the statute that was enacted in 1988.[10] That change affected persons convicted of specified crimes and required four votes of the seven-member Board to grant parole to those persons. Mr. Moore actually seeks to have the 1988 statutory requirement of three votes applied to him, not the statutory scheme that was in effect when he committed his crime. He suggests that all prisoners whose crimes occurred after January 1, 1998, the effective date of the 1997 four-vote requirement, be subject to that statute and that all others have the benefit of the three-vote statute adopted in 1988, regardless of when their crimes were committed or what the statutes governing the Board provided at the time of the crime.

In *Miller*, we traced the history of statutes governing the Board and its procedures. The size of the Board has been increased and decreased by statutory changes over time. At the time of Mr. Miller's crime, the Board consisted of three members, and a majority vote was required. By the time of his 2000 parole hearing, the Board had seven members, and a grant of parole required the vote of three members except for persons convicted of specified serious crimes, including that committed by Mr. Miller. In those situations, four votes were required to grant parole. In *Miller*, the court noted that Mr Miller's argument would require that his parole be voted on by a Board consisting of three members, which was a practical impossibility now that the Board was statutorily comprised of seven members. It was the opinion of this court that providing each convicted person with a Board whose composition and voting requirements were determined by the procedural statutes in effect at the time of the commission of his or her offense would result in the whole administrative system of parole becoming unworkable. 119 S.W.3d at 700.

Mr. Moore is in the same situation as Mr. Miller. At the time he committed his crime, the Board was composed of three members, and a majority vote was required to grant parole. Thus, the "law annexed to his crime" was not the 1988 statute requiring three out of seven votes. He attempts to take advantage of one change in Board membership and voting requirements that occurred after he committed his crime, but avoid the applicability of a later change. His *ex post facto* claim must fail. Further, it is difficult to conclude that requiring a vote of four out of seven members (57%) disadvantages Mr. Moore in his quest for parole when compared to the two out of three (67%) requirement that existed at the time he committed his crime.

## IV. CONCLUSION

The trial court is affirmed. We remand this case to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Donald Moore.

_____
PATRICIA J. COTTRELL, JUDGE

---

[10]That act included language making it applicable to persons then serving a sentence in state correctional facilities. 1988 Tenn. Pub. Acts, ch. 880 § 3. Mr. Moore was serving his sentence when that act became effective.