IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs to the Western Section of the Court of Appeals
on March 30, 2007

**RUDOLPH POWERS**

v.

**TENNESSEE BOARD OF PROBATION AND PAROLES**

An Appeal from the Chancery Court for Davidson County
No. 04-1516-II    Carol L. McCoy, Chancellor

No. M2005-01529-COA-R3-CV - Filed on May 23, 2007

This appeal involves a prisoner seeking parole. The petitioner was convicted in 1981 and is serving a life sentence. In 2004, he was denied parole based on the severity of his offense. He filed the instant petition for a common-law writ of certiorari, claiming violations of his constitutional right to equal protection and due process, and a violation of the *ex post facto* clause of the Constitution. The trial court dismissed the petition on its face, finding that it failed to state a claim upon which relief could be granted. The petitioner filed this appeal. We affirm, concluding that the petition does not state a claim for relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Rudolph Powers, appellant, *pro se*.

Paul G. Summers, Attorney General, and Mark A. Hudson, Senior Counsel, for the appellee, Tennessee Board of Probation and Paroles.

**OPINION**

Petitioner/Appellant Rudolph Powers ("Powers") is an inmate in the custody of the Tennessee Department of Correction ("TDOC"). Powers filed a petition for writ of certiorari in the trial court below against the Respondent/Appellee Tennessee Board of Pardons and Paroles ("the Parole Board"). Because this appeal arises out of the trial court's grant of the Parole Board's motion to dismiss for failure to state a claim under Rule 12.02(6) of the Tennessee Rules of Civil Procedure, we recount the facts of this case as stated in Powers' petition.

Powers was arrested on May 17, 1980, for robbery/aggravated rape and robbery. He was later convicted of the charges. In October of 1981, he was sentenced to imprisonment for Life plus 25 years and 50 years. The first time Powers met with the Parole Board for consideration of his request for parole was on January 7, 2004, some twenty-three years after his arrest. On that date, the Parole Board made a final decision to deny him parole, based on the seriousness of his offense. The Parole Board set Powers' next parole hearing in five (5) years.

On May 19, 2004, Powers filed the instant petition for common-law writ of certiorari against the Parole Board. In his petition, Powers challenged the Parole Board's decision to deny him parole, arguing that it acted illegally, fraudulently, and arbitrarily and violated its own policies and procedures by (1) hearing officer misconduct, (2) significant procedural errors, and (3) failure to consider new evidence. He asserted that he was entitled to undergo a psychological examination prior to his parole hearing, and that the hearing officer and the Parole Board violated his right to equal protection under the law by not requesting that he be given such an examination. Powers contended that the statutes in effect on his conviction date or offense date required that he be given a psychological examination, and that by imposing current procedures and guidelines, the Parole Board violated his due process rights and denied him parole based on an impermissible *ex post facto* application of the law. Powers alleged that the Parole Board had made a policy change that removed his "safety valve" date, and that he was never informed of this change or how it would affect his punishment. Powers was later given permission to amend his petition to state that it was the first application for the writ as is required under Tennessee Code Annotated § 27-9-102.

On January 11, 2005, the Parole Board filed a motion to dismiss the amended petition for failure to state a claim upon which relief could be granted, pursuant to Rule 12.02(6). Powers filed a memorandum in opposition to the motion, arguing that the motion was untimely. On May 18, 2005, the trial court entered an order on the Parole Board's motion to dismiss. The trial court first rejected Powers' claim that the motion was untimely, because it was filed within the time limits given to the Parole Board by the trial court. The trial judge, Chancellor Carol L. McCoy, then set forth and carefully analyzed each of the claims in Powers' petition. The substance of the trial court's order is set forth below:

> [Powers] states that he was arrested on May 17, 1980 for Robbery/Aggravated Rape and Robbery and that he was sentenced to Life plus 25 years and Life plus 50 years in October of 1981. He states that he first met with the Parole Board on January 7, 2004, and that on January 27, 2004, the [Parole] Board made a final decision to deny him parole due to the seriousness of his offense. He further states that the [Parole] Board set off his next parole hearing for five (5) years.
> [Powers] contends that the [Parole] Board, its individual members and the Hearing Officer acted illegally, fraudulently and arbitrarily and violated [Parole] Board policies and procedures through: 1) hearing officer misconduct, 2) significant procedural errors and 3) failure to consider new evidence. More specifically, he contends that he was entitled to undergo a psychological examination prior to his parole hearing, and that the Hearing Officer and the [Parole] Board violated his right

to Equal Protection under the law by not requesting that he undergo such an examination. He further states that such an examination was necessary under the statutes in effect on his conviction date or offense date, and that by imposing current procedures and guidelines, the [Parole] Board engages in both a due process violation and an *ex post facto* violation of his rights, prohibited by Article 1, Section 10 of the U.S. Constitution and Article 1, Section 11 of the Tennessee Constitution. In addition, he alleges that the [Parole] Board made a policy change that removed his "safety valve date," and that he was never informed of this change or how it would [a]ffect his punishment.

A motion to dismiss pursuant to T.R.C.P. 12.02(6) admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997). Such a motion challenges only the legal sufficiency of the complaint; therefore, courts should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Willis v. Tenn. Dept. of Correction*, 113 S.W.3d 706, 710 (Tenn. 2003).

First, [Powers] is apparently alleging that the [Parole] Board is treating him differently from inmates whose parole hearings were held before the statutes and rules governing parole hearing procedure were changed. According to [Powers], the statutes and rules in effect at the time of his crime and conviction provided for: 1) annual parole review; 2) a hearing conducted by a Board member instead of a hearing officer; 3) a grant of parole upon only 2 votes out of 3, instead of 4 votes out of 7 (plus the initial vote of a hearing officer); and 4) a final parole decision made by the governor upon the [Parole] Board's recommendation, giving a candidate two chances to persuade authorities to grant him parole. [Powers] alleges that by subjecting him to statutes and rules that are different from the statutes and rules applied to inmates accorded hearings before him, that the [Parole] Board had infringed on his right to Equal Protection under the law. [Powers] has not shown that he is a member of a constitutionally protected class or that he received differential treatment as a result of membership in a protected class, such as to invoke a right to equal protection. *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6ᵗʰ Cir. 1997). Therefore, this argument must fail.

Next, [Powers] contends that by operating under the newer statutes and rules named above, the [Parole] Board has engaged in an *ex post facto* violation of his rights. The *ex post facto* prohibition is aimed at laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *California Dept. of Corrections v. Morales*, 514 U.S. 499, 504, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588 (1995). A violation occurs when a law "changes the punishment [to be imposed for a crime], and inflicts a greater punishment than the law annexed to the crime when it was committed." *Weaver v. Graham*, 450 U.S. 24, 32-33, 101 S.Ct. 960, 966, 67 L.Ed.2d 17 (1981). Two factors must be present to establish a violation of the *ex post facto* prohibition: 1) the law must apply retrospectively to events occurring before its enactment; and 2) the law must disadvantage the offender

affected by it. *State v. Ricci*, 914 S.W.2d 475, 480 (Tenn. 1996). Actions which extend parole eligibility by altering the criteria for such eligibility can implicate the *ex post facto* clause, because eligibility for parole is part of the law annexed to the crime when it is committed. *Kaylor v. Bradley*, 912 S.W.2d 728, 732 (Tenn. Ct. App. 1995).

In the present case, [Powers'] eligibility for parole is not at issue. The challenged statutory changes have no effect on his eligibility, but only upon the procedures by which the State decides whether he should be granted parole. "Even if a law operates to the defendant's detriment, the *ex post facto* prohibition does not restrict 'legislative control of remedies and modes of procedure which do not affect matters of substance.' " *Miller v. Florida*, 482 U.S. 423, 433, 107 S.Ct. 2446, 2452, 96 L.Ed.2d 351 (1987). Therefore, [Powers'] *ex post facto* argument must fail.

Next, [Powers] contends that the [Parole] Board violated his Due Process rights by failing to follow proper procedures for his parole hearing. A prisoner has no constitutionally protected liberty interest in parole. T.C.A. § 40-35-503(b); *Wright v. Trammel*, 810 F.2d 589, 591 (6th Cir. 1987); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 (Tenn. Ct. App. 1995). Without such an interest, due process protections do not attach and there are no constitutionally mandated procedural requirements for parole hearings. *Phifer v. Tennessee Board of Parole*, 2002 WL 31443204 at *3 (Tenn. Ct. App. November 1, 2002). Therefore, [Powers'] Due Process argument is without merit.

[Powers] next argues that, under the Tennessee Constitution, the pardoning power belongs only to the governor, not to the [Parole] Board. It is true that article III, § 6 of the constitution gives the governor the "power to grant reprieves and pardons after conviction, except in cases of impeachment." However, a portion of that power has been properly delegated to the Board of Paroles. *Sadler v. Tenn. Bd. of Pardons and Paroles*, 2001 WL 1386090 at *2 (Tenn. Ct. App. November 8, 2001). Accordingly, this argument must also fail.

[Powers] next states that his case was heard by the Criminal Court of Appeals with an incomplete trial transcript, in violation of the 14th Amendment, making his conviction and sentence void on their face. He also contends that there are no pre-sentence reports, as are required by in a felony case. He requests that this Court order a DNA test so that he may prove his innocence. The present action, which seeks certiorari review of a parole decision, is not the proper venue for these complaints and requests for relief. [Powers] must address these complaints to the Court of Criminal Appeals and the criminal trial court having original jurisdiction over his case.

Last, [Powers] alleges that he should be granted a mandatory parole per T.C.A. § 40-28-117(b) and Rule 1100-1-1-03(10). He states that the 1982 Act that changed the mandatory parole statute expressly provided that it applied to persons who committed their offenses on or after 7/1/82. As [Powers] was convicted in 1981 on an offense committed in 1980, he contends that he should be eligible for

mandatory parole under the statute. The [Parole Board] failed to address this argument, which may lead [Powers] to believe that he is entitled to prevail.

The statute upon which [Powers] relies, T.C.A. § 40-28-117(b), states that, notwithstanding the other requirements for such parole, "[p]risoners convicted of a sex offense shall not be released on mandatory parole unless they have been evaluated and met the requirement described in T.C.A. § 40-28-116(a)." That statute, T.C.A. § 40-28-116(a)(2), states that

> No person convicted of a sex crime shall be released on parole unless a psychiatrist or licensed psychologist designated as a health service provider has evaluated such an inmate and determined to a reasonable medical or psychological certainty that the inmate does not pose the likelihood of committing sexual assaults upon release from confinement. The evaluations shall be provided by psychiatrists or licensed psychologists designated as health service providers whose services are contracted for and funded by the board.

[Powers] alleges that he did not receive a psychological evaluation prior to his parole hearing, even though he complained of this omission when requesting an appeal of the [Parole] [B]oard's decision. He attached to his petition for certiorari a copy of his complaint to the [Parole] Board and a copy of the [Parole] Board's letter of May 3, 2004 denying his appeal and concomitant request for evaluation.

Mandatory parole was created by Chapter 624 of the Public Acts of 1974 and codified in pertinent part as T.C.A. § 40-28-117(b), providing that

> (b) Every prisoner who has never been granted a parole by the board on a particular sentence of imprisonment shall be granted a mandatory parole by the board subject to the following restrictions:
>
> * * *
>
> (2) Prisoners serving a determinate or indeterminate sentence with a maximum term of over ten (10) years as fixed by the court, shall be paroled by the board six (6) months prior to the completion of the maximum term of sentence less credit for good and honor time and incentive time.

T.C.A. § 40-28-117(b).

[Powers] was sentenced to Life plus 25 years and Life plus 50 years. Under the mandatory parole statute, he would be eligible for parole six months before the completion of his maximum term. Unfortunately for [Powers], his date of death is an indeterminate sentence and serves as a benchmark in calculating the maximum sentence possible. He is subject to the restrictions set out in the mandatory parole statute and the general provision of that statute is of no benefit to him. Accordingly, his argument is without merit.

(Footnote omitted). Accordingly, the trial court granted the Parole Board's motion to dismiss for failure to state a claim. From this order, Powers now appeals.

On appeal, Powers challenges virtually every aspect of the trial court's decision. The issues on appeal, as we perceive them,[1] are as follows:

1. Whether the trial court erred in determining that the Board's motion to dismiss was timely filed?
2. Whether the trial court erred in rejecting Powers' equal protection claim?
3. Whether the trial court erred in rejecting Powers' due process claim?
4. Whether the trial court erred in determining that Powers was not entitled to a psychological examination to enable him to be eligible for mandatory parole?
5. Whether the trial court erred in determining that the denial of Powers' parole was not based on an impermissible *ex post facto* application of the law?
6. Whether the trial court erred in determining that certain matters were not properly before the court but, instead, should have been raised in Powers' direct appeal from his conviction?

The common-law writ of certiorari is the proper procedural vehicle by which a prisoner may seek review of a decision by the parole eligibility review board. ***See Willis v. TDOC***, 113 S.W.3d 706, 712 (Tenn. 2003). Under a common-law writ of certiorari, the scope of review is limited to a determination of whether the Parole Board exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily; we are not empowered to inquire into the intrinsic correctness of the Parole Board's decision to deny parole. ***Id.*** In this case, the trial court granted the Parole Board's motion to dismiss the complaint on its face for failure to state a claim under Rule 12.02(6). When reviewing the dismissal of a petition on this basis, we take the factual allegations in the complaint as true and review the trial court's legal conclusions *de novo*, according them no presumption of correctness. ***Id.*** at 710. Because a motion to dismiss a complaint under Rule 12.02(6) challenges only the legal sufficiency of the complaint, such a motion should be granted only when the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. ***Id.***

Powers first asserts that the trial court erred in declining to dismiss the Parole Board's motion to dismiss as untimely. He notes that he filed his amended petition on December 2, 2004, and the Parole Board's motion to dismiss was not filed until January 11, 2005. However, in its November 12, 2004 order, the trial court specifically instructed the Parole Board to file a response or dispositive motion in the case no later than January 28, 2005. Because the motion to dismiss was filed well before the January 28, 2005 deadline, we find no error in the trial court's conclusion that the motion to dismiss was timely filed.

Powers also argues that the trial court erred in determining that he failed to state a claim for violation of his constitutional right to equal protection. In his petition, Powers asserted that his equal protection rights were violated because he was treated differently from other inmates whose parole hearings were held before the statutes and rules governing parole hearing procedures were changed.

---

[1] In his *pro se* appellate brief, Powers listed thirty-three (33) issues for review. In this opinion, most are considered in combination with others, and all have been considered.

He claims that the statutes and rules in effect at the time of his crime and conviction provided for (1) a mandatory annual parole review; (2) a hearing conducted by a Parole Board member instead of a hearing officer; (3) a grant of parole upon only two votes out of three, rather than four votes out of seven; and (4) a final decision made by the governor, giving him a second chance to convince authorities to grant him parole. As noted by the trial court, however, Powers' petition does not allege that he is a member of a constitutionally protected class, or that he is being treated differently as a result of his membership in a protected class. These elements are necessary to establish a claim for violation of equal protection rights. *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997), *cited in Henderson v. Traughber*, No. M2002-02358-COA-R3-CV, 2003 WL 21642765, at *1 (Tenn. Ct. App. July 14, 2003). Consequently, we affirm the trial court's dismissal of Powers' equal protection claim.

Powers also challenges the trial court's dismissal of his due process claim. Powers contended that the Board violated his due process rights by failing to follow proper procedures at his parole hearing. As the trial court correctly noted, a prisoner has no constitutionally protected liberty interest in parole. *See Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 7-8 (1979); *Wright v. Trammell*, 810 F.2d 589, 591 (6th Cir. 1987); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 (Tenn. Ct. App. 1995). In the absence of a constitutionally protected interest, due process protections do not attach; consequently, the Constitution does not mandate procedural requirements for parole hearings. Therefore, we affirm the trial court's dismissal of Powers' due process claim.

Powers also argues on appeal that the trial court erred in determining that he was not eligible for mandatory parole under the applicable statute. In a related argument, Powers contends that the trial court erred in finding that the statutes did not require that he be given a psychological examination in order for him to be eligible for mandatory parole. The parameters for mandatory parole are set forth in Tennessee Code Annotated § 40-28-117(b), which provides that prisoners, such as Powers, who are serving maximum sentences of over ten (10) years "shall be paroled by the board *six (6) months prior* to the completion of the maximum term of sentence . . . ." T.C.A. § 40-28-117(b)(2) (2003) (emphasis added). However, the statute also includes a proviso that prisoners convicted of a sex crime shall not be released on parole unless they have undergone a psychological evaluation showing that the prisoner "does not pose the likelihood of committing sexual assaults upon release from confinement." T.C.A. § 40-28-117(b)(6) (incorporating T.C.A. § 40-28-116(a)(2)).

In his petition, Powers states that the Parole Board denied his request for parole based on the seriousness of his offense, not based on the fact that he had not undergone a psychological evaluation or that he was likely to commit sexual assault if he were released. Therefore, the fact that he had not been evaluated would not have affected the Parole Board's decision. More importantly, as emphasized by the trial court, Powers is simply not eligible for mandatory parole under the statute, because he received a life sentence plus 25 years and plus another 50 years. When a prisoner is sentenced to a life in prison, "there is no way to determine 'six months' prior to the completion of this maximum term." *Simpson v. Campbell*, No. M2000-00218-COA-R3-CV, 2001 WL 76312, at *2 (Tenn. Ct. App. Jan. 30, 2001); *see Richardson v. TDOC*, 33 S.W.3d 818, 820 (Tenn. Ct. App.

2000) (determining that prisoner is not eligible for mandatory parole under the statute until 6 months prior to the completion of his 99-year sentence). Therefore, Powers is not eligible for mandatory parole under the statute, regardless of whether he were given a psychological examination.

Powers also contends on appeal that the trial court erred in concluding that Board did not engage in a violation of the constitutional provision barring an *ex post facto* application of the law. He claims that his rights were violated because the Board conducted his parole hearing in accordance with current statutes and rules, rather than in accordance with the statutes and rules in effect at the time of his crime and conviction. As we outlined above, Powers asserts in his petition that the rules in existence at the time of his crime and conviction are more favorable to him than the current statutes and rules, and that to conduct his hearing according to the current rules violates his rights against *ex post facto* application of the law.

A violation of the Constitution's prohibitions against *ex post facto* application of law can occur when a law "changes the punishment [to be imposed for a crime], and inflicts a greater punishment than the law annexed to the crime when it was committed." *Weaver v. Graham*, 450 U.S. 24, 32-33 (1981); *State v. Pearson*, 858 S.W.2d 879, 883 (Tenn. 1993). In order for the *ex post facto* prohibition to be applicable, the law must apply retroactively, and the new law must disadvantage the offender affected by it. *State v. Ricci*, 914 S.W.2d 475, 480 (Tenn. 1996). Actions which adversely affect parole *eligibility* by altering the criteria for such eligibility can implicate the *ex post facto* clause, because eligibility for parole is part of the law annexed to the crime when it is committed. *Kaylor*, 912 S.W.2d at 732. In this case, however, as the trial court observed, the challenged statutory changes do not affect Powers' eligibility for parole. Rather, they affect only the *procedures* utilized by the Parole Board to decide whether he should be granted parole. New laws that decrease the frequency of parole hearings or increase the number of votes necessary to be paroled are considered to be procedural and do not violate the *ex post facto* prohibitions. *See California Dep't of Corrections v. Morales*, 514 U.S. 499, 506 n.3 (1995); *see also Sams v. Traughber*, No. 01A01-9603-CH-00133, 1996 WL 467684, at *3-*4 (Tenn. Ct. App. Aug. 14, 1996) (decrease in frequency of parole hearings); *Miller v. Tenn. Bd. of Probation & Paroles*, 119 S.W.3d 696, 701 (Tenn. Ct. App. 2003) (increase in number of votes required for parole); *see also Cummings v. Burt*, No. 95-2331, 1997 WL 437114, at *2 (6th Cir. Aug. 4, 1997) (decrease in frequency of parole hearings and increase in number of votes required for parole). The other changes cited by Powers, having the hearing conducted by a hearing officer and no longer having the Governor make the final decision, would likewise only affect the procedures by which the State determines whether he should be granted parole, not his eligibility for parole. Therefore, we agree with the trial court's conclusion that Powers failed to state a claim for a violation of the Constitution's *ex post facto* clause.

Finally, it appears that Powers also seeks to appeal the trial court's failure to address his claims that the Tennessee Court of Criminal Appeals heard his appeal of his criminal conviction with an incomplete trial transcript, in violation of the 14th Amendment, that a pre-sentence report was impermissibly omitted from the record, and that he is entitled to a DNA test to prove his innocence. We agree with the trial court's decision that these issues were not properly before the trial court,

since they relate to Powers' culpability for his crimes and the sentence imposed in his criminal trial. Therefore, any jurisdiction regarding those issues would remain with the criminal courts.

Any other issues raised but not specifically addressed in this Opinion are deemed without merit, and we find no error in the trial court's dismissal of Powers' petition.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant Rudolph Powers, and his surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE